

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-06-366-CR**

MICHAEL SEAN LEWIS                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                              STATE

-----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. Introduction

In two points, Appellant Michael Sean Lewis appeals his conviction for felony driving while intoxicated (DWI).[2]  We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

[2] *See* TEX. PENAL CODE ANN. § 49.09(b)(2) (Vernon Supp. 2007) (stating that DWI is a felony if the defendant has two previous DWI convictions).

## II. Factual and Procedural History

In the early hours of March 2, 2005, Fort Worth Police Officer Deena Evans stopped Lewis on Camp Bowie for speeding and for failing to wear a seatbelt. Rather than pull over to the curb, Lewis stopped his car in a left-turn lane. Officer Evans testified that when she asked Lewis for his driver's license and proof of insurance, she smelled alcohol coming from him and noticed his bloodshot eyes and slurred speech. When Officer Evans asked Lewis from where he had come, he said, "Katie Lynn's," a bar. When she asked him if he had been drinking, he said, "I had some." Officer Evans had Lewis exit his car and as he did so, she noticed that his balance was swayed and unsteady. She had Lewis perform numerous sobriety tests; after he failed several of them, Officer Evans arrested him. At the police station, Lewis performed additional sobriety tests and agreed to submit a breath sample for alcohol analysis.

A jury convicted Lewis of driving while intoxicated and felony repetition[3] and assessed punishment at seven years' imprisonment and a $6,000 fine. The trial court sentenced Lewis to eight years' community supervision. This appeal followed.

---

[3] At trial, both parties stipulated that Lewis had two prior DWI convictions.

### III. Factual Sufficiency

In his second point, Lewis claims that the evidence presented at trial was factually insufficient to support his conviction.

**A. Standard of Review**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to

3

overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### B. Analysis

Lewis argues that the evidence presented at trial was factually insufficient to support his conviction because the video recording of Officer Evans's initial encounter with Lewis on Camp Bowie did not show that he was intoxicated.

4

According to Lewis, Officer Evans's claim at trial that Lewis had swayed and weaved during their encounter was not supported by the video recording. Lewis argues that this video recording, which was taken "within minutes of his operation of a vehicle," has greater evidentiary weight than the breath tests that were taken over an hour later.

Lewis is correct that the video recording of Officer Evans's initial encounter with him does not unequivocally show that Lewis was intoxicated. Equally important, however, is that the recording, with its poor lighting and grainy, relatively small images of Officer Evans and Lewis, does not unequivocally show that Lewis was not intoxicated.

Even more importantly, Lewis fails to address in any detail Officer Evans's trial testimony. Officer Evans testified that after she pulled Lewis over and began speaking to him, she noticed the smell of alcohol coming from him, and she also noticed that his eyes were bloodshot and watered and that his speech was slurred. She subsequently asked Lewis to get out of the car and, as he did so, he stumbled over a street median.[4] After Lewis was out of his car and Officer Evans began speaking with him, she noticed that his balance was "swayed and unsteady" and that, as he walked to the rear of his vehicle, "his

---

[4] The video recording also shows this.

walk was swayed, staggered and unsteady" and "[h]is speech was slurred."

She then administered three field-sobriety tests. First, she administered the

horizontal gaze nystagmus (HGN) test and found a total of six clues—three in

each eye.[5] She then administered the walk-and-turn test and found that Lewis

exhibited three clues. Finally, she administered the one-leg stand and found

that Lewis exhibited one clue. She then arrested him for DWI.

Giving due deference to the jury's determinations of Officer Evans's

demeanor and credibility, we cannot say that the evidence of Lewis's

intoxication when he was pulled over by Officer Evans is so weak that the

verdict is clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at

414–15, 417; *Johnson*, 23 S.W.3d at 11. Thus, we hold that the evidence is

factually sufficient to support Lewis's conviction. We overrule Lewis's second

point.

### IV. "Per Se" Theory of Intoxication

In his first point, Lewis argues that the trial court erred when it submitted

to the jury the "per se" theory of intoxication. In its indictment, the State

alleged that Lewis had "operate[d] a motor vehicle in a public place while [he]

---

[5] When asked by the State how many clues indicate intoxication,
Officer Evans answered, "Six—well, four."

6

was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body or by having an alcohol concentration of at least 0.08."[6] After the State rested its case, Lewis moved for a directed verdict on the portion of the indictment that alleged that Lewis had a blood-alcohol concentration of 0.08. The trial court denied the motion.

In its charge to the jury, the trial court defined "intoxicated" as "(A) not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol into the body; OR (B) having an alcohol concentration of 0.08 or more." The charge authorized the jury to find Lewis guilty if it found, among other things, that Lewis had been operating a motor vehicle while he "was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body or by having an alcohol concentration of at least 0.08." Lewis objected to the jury instruction

---

[6] The indictment also included a second paragraph alleging that Lewis had

> operate[d] a motor vehicle in a public place while [he] was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol, or by having an alcohol concentration of at least 0.08, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into his body.

The State subsequently abandoned this paragraph.

7

on the "per se" theory because the State had failed to present sufficient evidence, i.e., evidence of Lewis's blood-alcohol content at the time that he operated his vehicle, to support the "per se" theory. The trial court overruled his objection.[7]

**A. Standard of Review**

---

[7] The State argues that because Lewis's claim of jury-charge error is based on his motion for a directed verdict, "this court should limit its review to the denial of said motion." But the following exchange between Lewis's attorney and the trial court makes clear that Lewis specifically objected to the jury charge—it was the trial court that linked Lewis's jury-charge objection to his motion for a directed verdict:

> [Trial Court]: . . . I understand the Defense objects to the two phrases in the charge which define the .08 theory and apply in the application paragraph.
>     Based on the Court's failure to grant the directed verdict, other than the objection to those two parts of the charge, do you have any other objections to the charge?
>
> [Lewis's Attorney]: No. Other than those, we don't.
>
> [Trial Court]: All right. Any requested charges that were not granted? I did put the Fifth Amendment in there for you already.
>
> [Lewis's Attorney]: No.
>
> [Trial Court]: Then the objection to the .08 language is still overruled.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error. TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *see also Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In other words, a properly preserved error will require reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see also Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

**B. Analysis**

Lewis argues that the trial court erred when it submitted to the jury the "per se" theory of intoxication.

Texas law defines "intoxicated" as

9

> not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or . . . having an alcohol concentration of 0.08 or more.

TEX. PENAL CODE ANN. § 49.01(2) (Vernon 2003). The first definition is known as the "impairment" theory of intoxication; the second is known as the "per se" theory of intoxication. *Bagheri v. State*, 119 S.W.3d 755, 756 n.1 (Tex. Crim. App. 2003). These two theories of intoxication do not involve separate violations of the law. *Id.* at 762. They set forth "alternate means by which the State may *prove* intoxication, rather than alternate means of *committing* the offense." *Id.* When a trial court submits alternate means of committing an offense, the evidence is sufficient to support a general verdict of "guilty" if it is sufficient to prove any one of the alleged means. *Id.*; *Reardon v. State*, 695 S.W.2d 331, 334 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

Given the testimony of Officer Evans, the evidence submitted at trial was both legally and factually sufficient to prove the first definition of "intoxicated," which was also submitted to the jury. That is, the evidence was sufficient to establish that Lewis did "not hav[e] the normal use of mental or physical faculties by reason of the introduction of alcohol." *See* TEX. PENAL CODE ANN.

10

§ 49.01(2)(A). Thus, the evidence was sufficient to support the jury's general verdict of "guilty."

It is true that in its arguments to the jury, the State pointed out that the jurors did not need to be unanimous in deciding in which manner Lewis was intoxicated, i.e., not having normal use of mental faculties, not having normal use of physical faculties or blood-alcohol content of at least 0.08. But it is also true that in these same arguments, the State emphasized Officer Evans's testimony regarding her encounter with Lewis at least as much as it emphasized the evidence concerning Lewis's blood-alcohol content. Thus, assuming, without deciding, that the trial court erred by including the "per se" theory of intoxication in the jury charge, we conclude that any charge error was harmless. *See Almanza*, 686 S.W.2d at 171; *Ovalle*, 13 S.W.3d at 786. We overrule Lewis's first point.

## V. Conclusion

Having overruled both of Lewis's points, we affirm the trial court's judgment.

PER CURIAM

PANEL F:   MCCOY, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

11

DELIVERED: June 12, 2008